UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANDRA BLACKMON | ) |
| | ) No. 1:06-cv-13\1:03-cr-241 |
| v. | ) |
| | ) *Judge Edgar* |
| UNITED STATES OF AMERICA | ) |

**MEMORANDUM**

Andra Blackmon ("Blackmon") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Court File No. 1). Blackmon contends counsel was ineffective for failing to challenge the eligibility of his prior convictions, which were more than fifteen years old, under the United State Sentencing Guidelines ("U.S.S.G."); raise an *Ex Post Facto* argument against using convictions that occurred prior to November 1, 1987, the effective date of the sentencing guidelines; and argue his sentence violated *United States v. Booker*, 543 U.S. 220 (2005).

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively Blackmon is not entitled to relief on the claims asserted; thus, an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993) (hearing is not required in every instance). Accordingly, the Court will decide the matter and explain the reasons Blackmon's asserted grounds for relief are without merit. Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

**I.      28 U.S.C. § 2255 - STANDARD OF REVIEW**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

1

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . " 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair

2

procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

**III.     BACKGROUND**

   **A.     Procedural Background**

Blackmon pleaded guilty on September 27, 2004, without benefit of a plea agreement, to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On January 10, 2005, Blackmon was sentenced as an Armed Career Criminal to a term of 225 months imprisonment, three years supervised release, and a $100.00 special assessment (Crim. Court File No. 20).

Judgment was entered on January 21, 2005, and Blackmon did not pursue an appeal. Thus, his conviction was considered final on February 4, 2005. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered"). On January 9, 2006, Blackmon timely filed the instant § 2255 motion.

   **B.     Factual Background**

The following pertinent facts are taken from the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 5.     On August 17, 2003, Chattanooga Police responded to a shooting at 4408 Kayla Circle. Upon arrival, investigators learned the matter was domestic in nature. The victim, Melissa Johnson, had been transported to Erlanger Medical Center after suffering multiple gunshot wounds. Investigators were advised by hospital medical staff that the victim had been shot multiple times in the legs, thigh area, hand, and neck. Ms. Johnson was immediately taken into surgery at Erlanger Medical Center. Investigators found **four (4) .380 caliber shell casings, one .380 caliber round, and a Davis Industries Model # P38 .380 caliber chrome semi-automatic pistol (Serial No. AP393060)** in the yard at Ms. Johnson's residence.
>
> 6.     Investigators left the hospital and went to the Chattanooga Police station located on Amnicola Highway to interview several witnesses to the shooting. Shania Sewell, Ms. Johnson's cousin, stated that she had been staying with Melissa Johnson for several weeks. According to her cousin, Ms. Johnson had been having problems

3

with her boyfriend Andra Blackmon. Mr. Blackmon was noted to be the father of Melissa Johnson's four year old son. Ms. Sewell advised that Andra Blackmon had broken into the residence during the summer. On August 17, 2003, at approximately 10:45 p.m. Ms. Sewell, Melissa Johnson, Zenobia McCullough, Rodney Hicks, and the victims' minor child were at Ms. Johnson's residence. Ms. Johnson had observed Andra Blackmon drive onto her street and she then called the police. Ms. Sewell told officers that she stepped out onto the porch and saw Andra Blackmon. She staed that she ran inside after hearing shots fired. At this point, Ms. Sewell called 911 and remained inside the residence until police arrived. According to Shania Sewell, the tires of several family members' vehicles had been slashed over the prior few days and that [sic] Mr. Blackmon had telephoned Ms. Johnson's residence approximately four times on the day of the shooting. He was noted to have called around thirty minutes prior to the shooting to talk to his son.

7. After interviewing Ms.Sewell, investigators spoke with Rodney Hicks who is also a cousin of Ms. Johnson's. Mr. Hicks had been residing with Melissa Johnson for several weeks prior to the shooting due to Ms.Johnson's problems with Mr. Blackmon. Mr. Hicks advised police that Melissa Johnson and Zenobia McCullough, the victim's best friend, were sitting on the front porch when they saw Mr. Blackmon drive onto the victim's street. After observing Mr. Blackmon, Ms. Johnson called police. Mr. Hicks said that he went around to the rear of the residence and observed Andra Blackmon dressed in black and sitting on the air conditioning unit. Mr. Blackmon went around to the front of the house and was then observed by Mr. Hicks to have a silver gun in his hand. Rodney Hicks advised police that he saw the muzzle flash and then ran into the woods. He said that he could hear several rounds come in his direction. After waiting several minutes, Mr. Hicks said that he went to a neighbor's house and called the police. Mr. Hicks also confirmed that Mr.Blackmon had telephoned the Johnson residence on several occasions earlier in the day.

8. Zenobia McCullough was the last witness to be interviewed by the investigators. She advised that she and Ms. Johnson were on the porch when Ms. Johnson observed Andra Blackmon drive onto the street, after which Ms. Johnson called police. When Mr. Blackmon came around from the rear of the residence, Ms. Johnson said "He got a gun!" Ms. McCullough said that Mr. Blackmon responded "m...f....I got a gun!" Ms. McCullough advised officers that Mr. Blackmon had a small silver gun and when she heard shots being fired, she jumped off the porch and crawled into a crawl space under the house. Zenobia McCullough then said that Melissa Johnson's sister, Dianna Johnson, who lives next door, opened her door and ran into her house and called 911. At this point she said that she could hear her cousin, Melissa Johnson, gurgling. She stated that she could not determine if Mr. Blackmon had left the scene. Ms. McCullough did not leave Dianna Johnson's home until the police arrived. Ms. McCullough told investigators that Ms. Johnson's son was in bed when the shooting took place. Ms. McCullough also advised that

4

several months prior to this incident, Mr. Blackmon had been found in Ms. Johnson's residence cutting up her clothes.

9.  Warrants were issued for Andra Blackman for Attempted Murder and two counts of Aggravated Assault as a result of the events on August 17, 2003.

10. On August 19, 2003, at 4:00 a.m., Mr. Blackmon was located at 1700 Dodds Avenue in Chattanooga, Tennessee. A .380 silver gun was found at the residence. Mr. Blackmon told police that his vehicle was located on Cherryton Street behind the Walgreens on Brainerd Road, at an apartment complex. Officers located the tan 1985 Oldsmobile Toronado. Black clothing was found inside the trunk.

11. On August 22, 2003, investigators spoke with Melissa Johnson in her room at Erlanger Medical Center. Ms. Johnson told investigators that on the night of the incident, her nephew had called her and told her that he had seen Mr. Blackmon riding out in her area of town. There were warrants out for his arrest due to his breaking into Ms. Johnson's residence earlier in the summer. Ms. Johnson stated that Rodney Hicks and Shaina Sewell had been staying with her because she was frightened of Mr.Blackmon. According to Ms. Johnson, Mr. Blackmon had been telephoning her house. She state that Mr. Hicks, Ms. Sewell, Zenobia McCullough, and herself were sitting on her front porch the night of the incident and observed Mr. Blackmon drive into her neighborhood. She stated that they turned all of the lights out on the front porch and she went inside and called the police. After phoning the police, she stated that she returned to the front porch. Ms. Johnson said that she asked her cousin, Rodney Hicks, to go around to the back of the house to see if he could see Andra Blackmon from that view. When Mr. Hicks went to the rear of the residence, Andra Blackmon was coming toward the house from that direction. Ms. Johnson said that she observed Mr. Blackmon come to the front of the house and noticed a silver gun in his hand.

12. She said that the defendant began shooting at her and she fell to the floor. She recalls him making some comments, but she could not remember exactly what he said before he took several more shots at her legs. In a statement, Ms. Johnson said:

> "He shot me, actually I thought he shot me in the chest, but evidently he must ah (sic) shot me in my leg and that's when I went to the ground and that's when I noticed all this blood, just soaking in blood and I thought he had shot me in the head. He just kept on shooting me in the legs, kept on shooting me in the legs and then he finally, I guess he left, I don't know but ...uh...I was too scared to get up."

> Ms. Johnson stated that she was uncertain who disappeared where while the

5

> shooting was taking place. Ms. Johnson knew that her sister lived next door and most likely heard the gunshots and called 911. Ms. Johnson remembers the first police officer arriving and asking if she was alright and after she advised that she had been shot, the officer asked who shot her. She then told the officer that "my little boy's daddy" and she told him Andra Blackmon's name. Ms. Johnson stated that the next thing that she remember is waking up inside the hospital.

(PSR, pp. 3-6).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Blackmon asserts three claims against defense counsel. Blackmon alleges counsel was constitutionally ineffective for failing to challenge three aspects of his sentence: (1) the use of his prior convictions which were more than fifteen years old as predicate offenses to determine he was an armed career criminal; (2) the *ex post facto* clause was violated by increasing his Guideline range based upon prior convictions that occurred prior to the 1987 effective date of the Sentencing Guidelines; and (3) his sentence violated *United States v. Booker*, 543 U.S. 220 (2005) because the Court erroneously sentenced him under mandatory Guidelines. After a brief discussion of the applicable law, the Court will address these claims of ineffective assistance of counsel in turn.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of

6

reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that

the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

As an initial matter, the Court observes that Blackmon has failed to meet the prejudice prong as to any of his three claims of ineffective assistance of counsel because he has failed to allege, much less demonstrate, a reasonable probability that he would have gone to trial but for counsel's

7

alleged errors. Indeed, the only relief Blackmon requests is that the Court re-sentence him. Thus, Blackmon has failed to demonstrate any resulting prejudice as a result of counsel's alleged ineffective assistance. Furthermore, as explained below, Blackmon has failed to demonstrate counsel was ineffective.

### 1. *Prior Convictions Older than Fifteen Years*

Blackmon asserts that counsel was deficient for failing to challenge the use of prior convictions, which were used to determine he was an armed career criminal, because they were more than fifteen years old and therefore, were not predicate offenses under U.S.S.G. §§ 4A1.1 and 4A1.2. Blackmon's argument lacks any legal basis because, although there is a temporal restriction on prior felonies counted in criminal history under § 4A1.2, there is no such temporal restriction on prior felonies for purposes of the Armed Career Criminal Act ("ACCA") the statute under which Blackmon was sentenced. *See United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995).

Generally, a defendant convicted of being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g) is sentenced to a maximum of ten years in prison. However, a defendant convicted under § 922(g) can receive an enhanced sentence under the ACCA. The ACCA provides, in pertinent part, that a person who is a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g) and who has "three previous convictions . . . for a violent felony or serious drug offense . . . committed on occasions different from one another . . . shall be . . . imprisoned for not less than fifteen years." 18 U.S.C. § 924(e)(1); *United States v. Martin*, 526 F.3d 926, 938 (6th Cir. 2008). Moreover, armed career criminal status, under this section, enhances the advisory range recommended by the guidelines. *See* U.S.S.G. § 4B1.4. Thus, a sentence for a defendant receiving an enhanced

8

sentence under § 924(e) is determined by application of the armed career criminal guideline found at U.S.S.G. § 4B1.4.

Neither § 924(e) nor U.S.S.G. § 4B1.4 prohibit the use of prior convictions older than fifteen years when calculating the guideline range. As the Sixth Circuit specifically noted in *United States v. King*, 516 F.3d 425 (6th Cir. 2008), "[a]n application note to § 4B1.4 makes it clear that 'the time periods for the counting of prior sentences under §4A1.1' are not 'applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e).' U.S.S.G. § 4B1.4." *Id.* at 427-28. Moreover, the Sixth Circuit rejected this argument in *Unites States v. Moreno*, 933 F.2d 362 (6th Cir.), *cert. denied*, 502 U.S. 895 (1991). The *Moreno* Court held that the Guideline provisions used to calculate a defendant's criminal history score are not applicable to the determination of whether a prior conviction is a predicate conviction for purposes of 18 U.S.C. § 924(c), *Id.* at 373-74. "Although the Sentencing Guidelines may restrict the sentencing court's consideration of certain past offenses, § 924(e) does not." *Id.* Therefore, counsel's failure to argue that prior convictions that were more than fifteen years old could not be used as predicated offenses was not ineffective assistance of counsel and did not prejudice Blackmon.

Where, as here, when an armed career criminal possesses a firearm in connection with a crime of violence and is subjected to enhance punishment pursuant to § 924(e), U.S.S.G. § 4B1.4 provides the offense level and criminal history category. In Blackmon's case, the guideline provided for an offense level of 34 (§ 4B1.4(b)(3)(A))[1] and a criminal history category of VI (§ 4B1.4(c)(2)). The fact that § 4B1.4 (Armed Career Criminal) makes explicit that the 15-year limit on the age of

---

[1] After receiving a three level reduction for acceptance of responsibility, Blackmon's offense level was 31.

9

prior convictions does not apply to the Armed Career Criminal renders Blackmon's challenge frivolous.

In summary, Blackmon's sentence was determined under § 924(e) and U.S.S.G. § 4B1.4, neither of which take into consideration the age of the prior convictions. Blackmon is mistaken in his contention that U.S.S.G. §§ 4A1.1 and 4A1.2 prohibit the consideration of his prior convictions because the probation officer did not rely on those sections of the sentencing guidelines when calculating his criminal history category. Instead, independent of those provisions, the probation officer calculated the criminal history category as mandated in § 4B1.4(c)(2). Therefore, the age of Blackmon's past convictions were not relevant in calculating his criminal history for purposes of sentencing.

Accordingly, Blackmon is not entitled to relief on this claim as he has not demonstrated that his attorney rendered deficient assistance or that he was prejudiced because his convictions were properly counted as predicate offenses under the ACCA.

        2.       *Alleged Ex Post Facto Violation*

Blackmon maintains that the *Ex Post Facto* clause was violated by increasing his Guideline range based upon prior convictions that occurred prior to the 1987 effective date of the Sentencing Guidelines.

A law violates the *Ex Post Facto* Clause when it is applied retrospectively; that is, it "changes the legal consequences of acts completed before its effective date;" and it disadvantages "the offender affected by it." *Miller v. Florida*, 482 U.S. 423 (1987). The ACCA does not "make[] more onerous the punishment for crimes committed before its enactment." *Weaver v. Graham*, 450 U.S. 24, 36 (1981). Blackmon is being punished because he violated § 924(e) while he was a felon-

10

in-possession of a firearm in violation of 18 U.S.C. § 922(g) who had "three previous convictions . . . for a violent felony or serious drug offense . . . committed on occasions different from one another . . ." 18 U.S. C. § 924(e)(1). The enhancement provision does not affect the punishment previously meted out to Blackmon for the crimes committed prior to the effective date of the ACCA but rather, increases the punishment for the instant crime. Thus, the ACCA enhancement provision operates prospectively, not retrospectively, and therefore, is not an *Ex Post Facto* law.

Indeed, the Sixth Circuit has previously concluded that the ACCA does not offend the *Ex Post Facto* Clause. *United States v. Stuart*, 81 F.3d 162 (6th Cir. 1996), *available in* 1996 WL 145857, *2 ("Thus, we hold that the ACCA does not offend the *Ex Post Facto* Clause). In that case, Stuart argued that the ACCA violated the *Ex Post Facto* Clause of the constitution because it allowed courts to consider prior violent felony convictions that occurred before the passage of the sentencing guidelines; the Sixth Circuit disagreed. Moreover, every circuit court to address the issue has concluded that there is no *Ex Post Facto* problem when a court enhances a sentence under the ACCA on the basis of convictions that occurred prior to the ACCA's passage. *United States v. Springfield*, 337 F.3d 1175, 1179 (10th Cir. 2003); *also see United States v. Etheridge*, 932 F.2d 318, 323 (4th Cir. 1991) (enhancement on the basis of prior convictions occurring prior to effective date of enhancement statute (§ 924(e)) did not violate *Ex Post Facto* clause); *United States v. Leonard*, 868 F.2d 1393, 1399-1400 (5th Cir. 1989) (same), *abrogated in part on other grounds by Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Jordan*, 870 F.2d 1310, 1314-15 (7th Cir. 1989) (criminal offenses committed by defendant prior to effect date of sentencing provision could be used to enhance sentence without violating *Ex Post Facto* clause); *United States v. Reynolds*, 215 F.3d 1210, 1213 (11th Cir. 2000).

Accordingly, counsel was not deficient for failing to argue Blackmon's sentence violated the *Ex Post Facto* Clause because the ACCA is not retroactive as it is not an additional penalty for the offenses committed prior to its enactment, but rather is an increased penalty for the instant offense which is considered to be an aggravated offense because it is a repetitive one.

### 3. *Booker Violation*

Blackmon claims counsel was deficient for failing to argue his sentence violated *United States v. Booker,* 543 U.S. 220 (2005), in that the Court erroneously sentenced him under mandatory Guidelines. Although Blackmon was sentenced on January 10, 2005, two days prior to the *Booker* decision, judgment was not entered until January 21, 2005. Thus, counsel could have raised a *Booker* argument on direct appeal had a direct appeal been pursued. Nevertheless, the record demonstrates that this Court would not have selected a lower sentence if Blackmon's sentence had been challenged under *Booker* or vacated and remanded for resentencing under an advisory Guideline range. Thus, Blackmon's counsel was not ineffective and Blackmon suffered no prejudice.

As the Court observed during Blackmon's sentencing, he has an extremely serious criminal record including assaults and two convictions for attempt to commit murder, in addition to the instant conviction where he shot his child's mother eight times, once in the neck, once in the hand, and six times in the leg (PSI, p. 6). Blackmon's sentencing guidelines were 188-235 months and the Court rejected the lowest sentence possible within the guideline range and sentenced him to 225 months. Furthermore, the Court specifically stated that "if this Court were to be sentencing the defendant within the statutory range in the absence of the Federal Sentencing Guidelines, []the sentence would be the same as that which I have just imposed." (PSI, p. 14-15).

Thus, since the Court would sentence Blackmon to 225 months even under the advisory guidelines, he has failed to meet his burden to show prejudice resulting from counsel's failure to raise a *Booker* claim. *Booker* severed and excised two specific statutory provisions: "the provision that require[d] sentencing courts to impose a sentence within the applicable Guidelines range . . . and the provision that sets forth standards of review on appeal, . . ." *Booker*, 543 U.S. at 259. As the *Booker* Court noted, "[w]ithout the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. . . .[a]nd . . . requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." *Id.* Blackmon's sentence does not violate *Booker*. In addition to stating the Court would have rendered the same sentence in absence of the Federal Sentencing Guidelines, the Court also specified that the purpose of the Court's sentence in this case was "to protect the public." (Sentencing Transcript, p. 12). In addition, the Court recommended that Blackmon received the 500 hour substance abuse treatment program at the Bureau of Prisons and participate in an anger management treatment program.

Therefore, even under the advisory guidelines, Blackmon would have received the same sentence. Since the Court chose a reasonable sentence within the Guideline range and specified it would have given Blackmon the same sentence in the absence of the sentencing guidelines, Blackmon has failed to meet his burden of demonstrating prejudice resulted from counsel's failure to appeal the sentence under *Booker*. Therefore, under the circumstances of this case, Blackmon's claim fails on both prongs of the *Strickland* test because counsel was not deficient for failing to raise this claim on direct appeal since the Court gave the alternative sentence in the absence of the Federal

13

Sentencing Guidelines, and, in addition, Blackmon has failed to demonstrate prejudice due to counsel's alleged omission.

**IV. Conclusion**

For the above stated reasons, the Court concludes Blackmon's conviction and sentence were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

An appropriate judgment will enter.

              */s/ R. Allan Edgar*
            R. ALLAN EDGAR
        UNITED STATES DISTRICT JUDGE